UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANNETTE CADET,<br><br>                    Plaintiff,<br>     v.<br><br>OVERLAKE HOSPITAL MEDICAL CENTER,<br><br>                    Defendant. | CASE NO. 2:24-cv-01452-LK<br><br>ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT |

This matter comes before the Court on Defendant Overlake Hospital Medical Center's Motion to Dismiss for Insufficient Service of Process and Failure to State a Claim. Dkt. No. 25. Plaintiff Annette Cadet, who is proceeding pro se and *in forma pauperis*, opposes the motion. Dkt. No. 30. For the reasons set forth below, the Court grants the motion and dismisses this case.

**I.   BACKGROUND**

Ms. Cadet filed her complaint in this Court on September 12, 2024, alleging claims against Overlake under Title VII of the Civil Rights Act of 1964 ("Title VII") for discrimination and harassment based on her sex, race, and perceived disability status. Dkt. No. 5 at 3, 6. Overlake

filed a motion to dismiss. Dkt. No. 11. The Court granted that motion, finding that the complaint did not sufficiently allege claims for a hostile work environment, constructive discharge, or discrimination. Dkt. No. 21 at 4–8. The Court also found that Ms. Cadet had not properly served Overlake. *Id.* at 8–9. The Court granted Ms. Cadet leave to amend and ordered her to file an amended complaint and proof of service within 30 days. *Id.* at 9–10. Ms. Cadet then filed an amended complaint, Dkt. No. 22, and service-related documents, Dkt. No. 24.

In her amended complaint, Ms. Cadet contends that she experienced discrimination and harassment at Overlake in violation of Title VII; the Washington Law Against Discrimination ("WLAD"), Wash. Rev. Code § 49.60 *et seq.*; and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq. See generally* Dkt. No. 22. She alleges that on specific dates and "throughout [her] employment at Overlake Hospital[, she] was harassed and discriminated against by Asian coworkers" and by Overlake "because of [her] skin color," sex, and perceived disability (pregnancy). *Id.* at 1. She avers, "Overlake staff and kitchen management treated Asian and Asian American [workers] better than the three of us black people working in the kitchen." *Id.* She contends that she "was put to work in a dangerous and infectious environment without health and safety training which is required for employees in Washington State." *Id.*

Under the heading "Adverse action by Overlake," she writes that "Overlake treat[s] Asian American coworkers with respect and dignity and provide[s] all the help needed to do their work and treat[s her] and an Ethiopian deaf mute worker differently, less favorabl[y]." *Id.* at 1–2. That sentence is followed by an allegation that "[a] Chinese food service worker is always mak[ing] fun about Overlake fir[ing] a black woman for taking left over food home and never says anything about Asian [workers] taking food and beverage home." *Id.* at 2.

Ms. Cadet also alleges that her "Asian coworkers always ma[d]e offensive jokes and unwelcome negative comments about [her] race, color and . . . appearance," including about her

"stomach (perceived pregnancy)," and that "they spread rumors about [her] being pregnant even though [she] told them [she was] not pregnant." *Id.* at 1. She states that on December 5, 2023, "a Filipino man food service worker" made "racial slurs," "verbally harassed" her, and made "derogatory jokes about black people because according to him a black man was hired right before" her and "quit after a week." *Id.* at 2. On "December 8th and 9th 2023 through [M]arch 16th 2024, [a] Chinese male food service coworker [i]ntimidated [her], insulted [her] and criticized [her] about [her] position as (EVS/dishwasher) saying that the job is an old man job." *Id.* She also lists several other incidents that are not tied to specific dates, including the following:

- "An Indian man food service and cashier always jokes about marital status and [her] African hair. Every weekend he would come standing behind or in front of [her] table to say inappropriate jokes[.]" *Id.*

- "Multiple Asian workers in the kitchen make jokes about [her] working in men (sic) position" and "being malnourished, skinny legs, skinny arms black lady with big belly." *Id.*

- "Asian Filipino housekeepers continually follow[ed her] throughout the hospital buildings making fun of African people because less black people are hired by Overlake." *Id.*

She concludes her amended complaint by alleging that "Overlake is liable for the discrimination and harassment that cause[d her] to quit [her] job because of unequal treatment and negligence"; that "Overlake management is a big violator of federal, State and OSHA regulations, according to an ER nurse and a dialysis worker"; and that she worked at Overlake "from December 5, 2023 until March 22, 2024 without diversity training," "health and fire safety training," staff meetings, or "chemical or infection control education[.]" *Id.*

On June 16, 2025, Overlake filed this motion to dismiss, arguing that the amended complaint should be dismissed for insufficient service of process and failure to state a claim on which relief can be granted. Dkt. No. 25. After considering Ms. Cadet's response, Dkt. No. 30, the Court granted her one final opportunity to serve Overlake, and in the meantime deferred

ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT - 3

consideration of the motion to dismiss. Dkt. No. 32 at 5. Ms. Cadet subsequently filed a document stating that her process server went to Overlake's "main hospital," was directed to multiple different departments, and was ultimately instructed to serve Overlake's outside counsel, who refused service. Dkt. No. 33 at 1; *see also id.* at 2–11. The next day, Overlake's counsel accepted service on behalf of Overlake. Dkt. No. 34. Now that the service issue has been resolved, the Court turns to Overlake's request to dismiss for failure to state a claim.

## II.  DISCUSSION

### A.  Legal Standard

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Although the Court construes pro se complaints liberally, *see Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003), such complaints must still include "(1) a short and plain statement of the grounds for the court's jurisdiction, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought," Fed. R. Civ. P. 8(a). A plaintiff's pro se status does not excuse compliance with this bedrock requirement. *See Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107–08 (9th Cir. 2000) (explaining that the lenient pleading standard does not excuse a pro se litigant from meeting basic pleading requirements); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (although the court has an obligation to liberally construe pro se pleadings, it "may not supply essential elements of the claim that were not initially pled" (quoting *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982))). Rule 8(a)'s standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT - 4

B.  **The Court Dismisses the Amended Complaint**

Overlake moves to dismiss all claims in the amended complaint for failure to state a claim. Dkt. No. 25 at 7–12; *see also* Dkt. No. 31 at 2–4. Ms. Cadet opposes the motion. Dkt. No. 30.

   1.  Ms. Cadet Has Not Stated a Discrimination Claim under Title VII or the WLAD

Overlake contends that even construing Ms. Cadet's amended complaint liberally, "she does not make the factual allegations necessary to support a facially plausible claim for relief" for discrimination based on sex or race. Dkt. No. 25 at 7. Overlake asserts that "[h]er Amended Complaint is full of overly broad and vague statements that cannot establish a prima facie case of discrimination." *Id.* Nor does she allege that "*she* performed her job satisfactorily or that [she] suffered an[] adverse employment action." *Id.* at 8. In response, Ms. Cadet generally repeats the allegations in her amended complaint that she was "discriminated against at work by Asian coworkers and by the Defendant Overlake Hospital because [she is] black, a female and pregnant. (Perceived pregnancy)." Dkt. No. 30 at 1 (some capitalization removed); *see also id.* ("During my employment the defendant treated me differently than an Asian worker working at the culinary department.").

A plaintiff can establish a prima facie case of discrimination under Title VII or the WLAD by demonstrating that: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for h[er] position; (3) [s]he experienced an adverse employment action; and (4) similarly situated individuals outside h[er] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) (quoting *Peterson v. Hewlett–Packard Co.*, 358 F.3d 599, 604 (9th Cir. 2004)); *see also Crowe v. Wormuth*, 74 F.4th 1011, 1035–36 (9th Cir. 2023); *Biruk v. Boeing Co.*, No. C25-0779JLR, 2025 WL 1866182, at *4 n.6

(W.D. Wash. July 7, 2025) (noting that "the elements of a prima facie case of disparate treatment under WLAD and Title VII are the same").

Even construed liberally, Ms. Cadet's complaint lacks the factual allegations necessary to state a claim. Although she generally alleges that she was treated "less favorabl[y]," Dkt. No. 22 at 1–2, she does not identify *how* she was treated differently (other than alleging that she was subjected to harassing remarks, discussed below). Nor has she alleged facts to show that similarly situated individuals outside her protected class were treated more favorably, or other circumstances giving rise to an inference of discrimination. *Fonseca*, 374 F.3d at 847. Her vague allegations of different treatment, Dkt. No. 22 at 1–2, are "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" and insufficient to state a claim, *Iqbal*, 556 U.S. at 678.

Nor has Ms. Cadet sufficiently alleged that she experienced an adverse action. On this issue, she avers that she quit her job because of the discrimination, harassment, and negligence. Dkt. No. 22 at 2. While a constructive discharge can constitute an adverse action at least in some circumstances, *Jordan v. Clark*, 847 F.2d 1368, 1377 n.10 (9th Cir. 1988), Ms. Cadet has not alleged sufficient facts to state a claim for constructive discharge, as discussed in greater detail below.

Overlake also argues that Ms. Cadet's claims that Overlake violated workplace safety regulations and failed to provide safety training are untethered to any cognizable legal theory, Dkt. No. 25 at 11–12, and the Court agrees that this issue warrants dismissal of these allegations, *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) ("Dismissal can be based on the lack of a cognizable legal theory[.]"). If Ms. Cadet intended these allegations to buttress her discrimination claims, they do not. Ms. Cadet does not allege that others outside her protected class received training or that the lack of training was otherwise discriminatory. Instead, she alleges that the lack of training contributed to a "hazardous work environment," Dkt. No. 30 at 1,

a situation that neither Title VII nor the WLAD addresses, 42 U.S.C. § 2000e-2(a)(1) (Title VII prohibits employers from discriminating on the basis of an individual's sex, race, or other protected characteristic); *see also* Wash. Rev. Code § 49.60.180(3) (same). Accordingly, the complaint fails to state a discrimination claim under Title VII or the WLAD.

### 2. Ms. Cadet Has Not Stated a Harassment Claim under Title VII or the WLAD

To succeed on her hostile work environment claim, Ms. Cadet is required to establish that: (1) she was subjected to a hostile work environment, and (2) Overlake is liable for the harassment that caused the hostile environment to exist. *Fried v. Wynn Las Vegas*, 18 F.4th 643, 647 (9th Cir. 2021). To meet the first element, she must show: (1) she was subjected to verbal or physical conduct of a sexual or racial nature; (2) the conduct was unwelcome; and (3) "the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Id.* (citing *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2002)); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) ("When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." (citation modified)). "The WLAD requires substantively the same showing." *Brooks-Joseph v. City of Seattle*, 697 F. Supp. 3d 1085, 1102–03 (W.D. Wash. 2023) (citing *Loeffelholz v. Univ. of Wash.*, 285 P.3d 854, 859 (Wash. 2012)). "To determine whether conduct was sufficiently severe or pervasive," courts examine "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003) (citation omitted).

ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT - 7

Overlake contends that the amended complaint does not describe a workplace "permeated with sex or racial discrimination"; rather, it includes a "few specific harassing comments," which "amount to isolated incidents or offhand comments" that are insufficient to state a claim. Dkt. No. 25 at 10. Overlake also argues that Ms. Cadet "has not alleged sufficient facts to show that Overlake should be held liable for [her] coworkers' conduct." *Id.* In response, Ms. Cadet alleges that she was "harassed continually . . . by Asian coworkers" and that "Asian kitchen coworkers sa[id] inappropriate jokes and unacceptable racial slurs about [her] and other black workers[.]" Dkt. No. 30 at 1; *see also* Dkt. No. 22 at 1–2.

While an employer can be liable "for 'its own' acts," *Fried*, 18 F.4th at 647 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998)), here, the amended complaint alleges no acts of harassment by Overlake itself or by a supervisor, *see generally* Dkt. No. 22. In response to the motion to dismiss, Ms. Cadet alleges for the first time that an "Asian kitchen supervisor compared [her to] malnourished African children because of [her] enlarged stomach." Dkt. No. 30 at 2. As the Court previously informed Ms. Cadet, Dkt. No. 21 at 5, the Court's review is generally limited to the contents of the complaint subject to exceptions not applicable here; the Court cannot consider new allegations raised in response to the motion to dismiss. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint."); *Schneider v. Cal. Dept of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). The Court thus confines its review to the allegations in the amended complaint.

In addition to facing liability for its own remarks, an employer "can create a hostile work environment by failing to take immediate and corrective action in response to a coworker's or third

ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT - 8

party's sexual harassment or racial discrimination the employer knew or should have known about." *Fried*, 18 F.4th at 647 (quoting *Ellerth*, 524 U.S. at 759). However, Ms. Cadet's amended complaint does not allege that Overlake knew or should have known about the alleged harassment by coworkers or provide any facts to support such knowledge, *see generally* Dkt. No. 22, even though the Court's prior order of dismissal noted this shortcoming in the original complaint, Dkt. No. 21 at 6. Consequently, the only comment for which Overlake could be liable is the one (unpled) remark by the kitchen supervisor, which, even if considered, is not "extremely severe" or sufficient to establish a hostile work environment. *Fried*, 18 F.4th at 648 (explaining that "for a single incident to suffice, it must be extremely severe" (citation modified)).

Ms. Cadet also contends that she quit her job "because of unequal treatment and negligence." Dkt. No. 22 at 2; *see also id.* (alleging that she quit her job because of her coworkers' "abusive behavior, intimidation, humiliation and lies about [her] performance[]"). "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004). To establish that she was constructively discharged, a plaintiff "must make a further showing" beyond demonstrating a hostile work environment: "[s]he must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Id.* at 134. Similarly, to establish a constructive discharge under Washington law, "an employee must show that an employer engaged in a deliberate act, or a pattern of conduct, that made working conditions so intolerable that a reasonable person would have felt compelled to resign." *Barnett v. Sequim Valley Ranch, LLC*, 302 P.3d 500, 505 (Wash. Ct. App. 2013). "Creation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case." *Pennsylvania State Police*, 542 U.S. at 149. Here, because Ms. Cadet's allegations are insufficient to demonstrate a hostile work

environment, they are also insufficient to establish "the *graver* claim of hostile-environment constructive discharge[.]" *Id.* For these reasons, the Court dismisses Ms. Cadet's harassment and constructive discharge claims.

      3.  <u>Ms. Cadet Has Not Stated a Claim for Disability-Related Discrimination or Harassment</u>

Overlake contends that the amended complaints fails to state an ADA claim because it "fails to provide *any* factual assertions related to alleged violations of the ADA." Dkt. No. 25 at 12. Ms. Cadet responds by repeating the allegations in her amended complaint, stating that she was "harassed continually and discriminated against" by both coworkers and Overlake itself based on her perceived pregnancy. Dkt. No. 30 at 1; *see also* Dkt. No. 22 at 2 (alleging that her coworkers joked about her "big belly" and circulated "perceived pregnancy" rumors).

Both the ADA and the WLAD prevent an employer from discriminating against an employee based on a perceived disability. 42 U.S.C. § 12102(1)(C), (3); Wash. Rev. Code §§ 49.60.040(7)(a)(iii), 49.60.180. To establish a prima facie case of disability discrimination based on a perceived disability, a plaintiff must prove that she was: (a) "regarded by" her employer as disabled; (b) a "qualified individual"; and (c) subject to an adverse employment action because of her perceived disability. *Buhagiar v. Wells Fargo Bank, N.A.*, No. 22-16232, 2024 WL 2931427, at *3 (9th Cir. June 11, 2024); *see also Stewart v. Snohomish Cnty. PUD No. 1*, 262 F. Supp. 3d 1089, 1102–03 (W.D. Wash. 2017) (finding that a plaintiff was protected under the WLAD when the defendant "evidently perceived the impairment to exist").

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12102(3)(A). The ADA prohibits harassment based on perceived disability. *See* 29 C.F.R. § 1630.2(l) ("Prohibited actions include but are not limited to . . . harassment"). "[C]ase

ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT - 10

law about perceived disability claims in Washington is very sparse," *Clipse v. Com. Driver Servs., Inc.*, 358 P.3d 464, 474 (Wash. Ct. App. 2015), but the Court assumes without deciding that the WLAD also prohibits harassment based on a perceived disability as a type of disability discrimination.

Even so, "[p]regnancy and pregnancy related conditions are not considered 'disabilities' under Washington law." *Garcia v. Courtesy Ford, Inc.*, No. C06-855RSL, 2007 WL 1192681, at *5 (W.D. Wash. Apr. 20, 2007) (quoting *Hegwine v. Longview Fibre Co., Inc.*, 132 P.3d 789, 797 (Wash. 2006)). The same is true under the ADA: "A normal pregnancy without complications is not usually a disability under § 12102(1)(A) or (B)[.]" *Grive v. Clark Cnty.*, No. 2:17-cv-03109-JAD-VCF, 2019 WL 12875432, at *6 (D. Nev. Dec. 2, 2019). However, at least one court has held that "susceptibility to miscarriage and other pregnancy-related complications may qualify an individual under subsection (C), the 'regarded as' provision" of the ADA. *Id.*; *see also Bunnell v. William Beaumont Hosp.*, No. 24-1889, 2025 WL 2549224, at *7 (6th Cir. Sept. 4, 2025) ("Although pregnancy, by itself, is not a 'disability' under the ADA, some pregnancy complications can predicate a claim of disability discrimination."); *Castaneda v. State of Cal. Dep't of Motor Vehicles*, No. 2:24-CV-0788-DC-SCR, 2025 WL 3012219, at *5 (E.D. Cal. Oct. 28, 2025) ("Courts in the Ninth Circuit have held that pregnancy does not qualify as a disability under the ADA unless circumstances arise that are 'not a function of normal pregnancy,' like pre-term labor and weeks of bed rest." (quoting *Hogan v. Ogden*, No. CV-06-5078-EFS, 2008 WL 2954245, at *4–5 (E.D. Wash. July 30, 2008)).

Here, even if Ms. Cadet's coworkers and Overlake erroneously concluded that she was pregnant, she has not alleged that they believed that she was susceptible to pregnancy-related complications or otherwise regarded her as having an impairment, *see generally* Dkt. No. 22. Nor does she allege that she suffered any adverse action or harassment *because of* an impairment. *See,*

*e.g.*, *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 435 (9th Cir. 2018) (explaining that in a "regarded as" disabled claim, the adverse action must be "because of" the perceived disabling condition). Accordingly, the Court grants Overlake's motion to dismiss Ms. Cadet's disability-related discrimination and harassment claims.

  4. <u>The Court Declines to Grant Further Leave to Amend</u>

  While courts liberally provide pro se plaintiffs leave to amend, *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *Balistreri*, 901 F.2d at 699 (courts have a "duty to ensure that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements"), that is not limitless. Denying leave to amend is appropriate when the plaintiff fails to "correct the deficiencies" "outlined by the district court in dismissing [her] original complaint." *Gimbel v. California*, 308 F. App'x 123, 124 (9th Cir. 2009); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that further leave to amend may be denied due to "repeated failure to cure deficiencies by amendments previously allowed"); *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) (explaining that "the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint" (citation omitted)). As explained above, Ms. Cadet has failed to cure the deficiencies set out by the Court when dismissing her original complaint. *See* Dkt. No. 21.

  In addition, Ms. Cadet has not explained what further amendments she would make if given the chance. *See, e.g.*, *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008) (concluding that amendment would be futile where plaintiffs already filed an amended complaint containing the same defects as their original complaint and failed to state what additional facts they would plead if given leave to amend). Ms. Cadet's response to this motion repeats her conclusory and vague allegations, *see generally* Dkt. No. 30, with the addition of only one fact that, as set forth above, does not advance her claim. Therefore, leave to amend to add that

allegation would be futile, and the Court does not grant Ms. Cadet further leave to amend. *See, e.g.*, *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (explaining that leave to amend may be denied when amendment would be futile).

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS Overlake's motion to dismiss. Dkt. No. 25.

Dated this 30th day of October, 2025.

*[signature]*

Lauren King
United States District Judge